703 So.2d 346 (1997)
Freddie Wayne HARPER, as conservator and guardian of Freddie Lee Harper,
v.
Warren GREMMEL, M.D.
1960656.
Supreme Court of Alabama.
August 29, 1997.
Patrick M. Lamar of Siniard, Lamar & McKinney, P.C., Huntsville, for appellant.
Robert L. Williams of Spain & Gillon, L.L.C., Birmingham, for appellee.
MADDOX, Justice.
AFFIRMED. NO OPINION.
HOOPER, C.J., and SHORES, HOUSTON, BUTTS, and SEE, JJ., concur.
COOK, J., dissents.
COOK, Justice (dissenting).
I respectfully dissent. The plaintiff, Freddie Wayne Harper, appeals from a summary judgment entered in favor of Dr. Warren Gremmel in an action against Dr. Gremmel alleging malpractice in the medical treatment of F.L. Harper, while the latter was a patient at Huntsville Hospital, a private institution.
*347 According to undisputed evidence, F.L. Harper was admitted to Huntsville Hospital through its emergency room on August 26, 1992. At that time, he was suffering from "seizures and alcohol withdrawal." Throughout the night of August 27-28, Dr. Gremmel was the "on-call resident" at Huntsville Hospital, and he undertook to treat Harper.
At that time, Dr. Gremmel was a resident at the University of AlabamaHuntsville ("UAH"), a governmental entity. Through an "affiliation agreement" between UAH and Huntsville Hospital, Dr. Gremmel and other UAH personnel treated patients admitted to Huntsville Hospital. In the early morning hours, Harper leaped, or fell, from a window and suffered permanent injuries.
Freddie Wayne Harper, as F.L. Harper's conservator and guardian, sued Dr. Gremmel; Donna Payne, a registered nurse; and Huntsville Hospital, alleging medical malpractice. The trial court based its judgment in favor of Dr. Gremmel on the ground of qualified immunity. Dr. Gremmel was immune, the court concludednotwithstanding the fact that the alleged malpractice occurred at the facility of a nongovernmental institutionbecause of Dr. Gremmel's affiliation with UAH. The Court affirms that judgment, without an opinion.
I have been unable to locate any controlling Alabama authority. Dr. Gremmel cites Smith v. Arnold, 564 So.2d 873 (Ala.1990). However, Smith involved claims against a "consulting psychiatrist to the [Thomasville Adult Adjustment] Center," which was a "minimum-security facility operated by the Department [of Mental Health and Mental Retardation]." 564 So.2d at 874. Also, I note that Barnes v. Dale, 530 So.2d 770 (Ala.1988), involved claims against employees of "Bryce Hospitala mental health facility owned and operated by the State of Alabama." Id. at 771-72. Thus, the applicationas a matter of lawof the doctrine of qualified immunity to physician services performed at private institutions would require a substantial extension of the holdings of Smith and Barnes. I disagree with this extension for two reasons.
First, I believe the facts in this case present a jury question as to whether Dr. Gremmel, in treating F.L. Harper, was essentially a "loaned servant" of Huntsville Hospital. Of the loaned servant doctrine this Court has said:
"In determining whether an employee has become a loaned servant the ultimate test is: Whose work was the employee doing and under whose control was he doing it [?] Dumas v. Dumas Brothers Manufacturing Co., 295 Ala. 370, 378, 330 So.2d 426, 432 (1976). It is not the actual exercise of control which is determinative but rather the reserved right to control the employee. United States Steel Corp. v. Mathews, 261 Ala. 120, 123, 73 So.2d 239, 242 (1954). Where the work of the employee is part of a large undertaking, mere suggestions as to details necessary for a cooperative must be distinguished from actual authoritative direction and control. 261 Ala. at 124, 73 So.2d at 242."
Coleman v. Steel City Crane Rentals, Inc., 475 So.2d 498, 500 (Ala.1985) (emphasis added), cert. denied sub nom., Illinois Cent. Gulf R.R. v. Coleman, 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986). "Even in the case of attorneys and physicians there may be the master and servant relation, as where a firm of attorneys employs an attorney as a member of the office staff." Restatement (Second) of Agency § 223 cmt. a (1958). "[L]ikewise, while the physician employed by a hospital ... is not, in the normal case, a servant of the hospital, ... it may be found that the house physician or the internes, if subject to directions as to the manner in which their work is performed, are servants of the hospital...." Id. (emphasis added). "`[W]hether one who is usually and normally the servant of one master has become specially and temporarily the servant of another... is ordinarily a question of fact.'" United States Steel Corp. v. Mathews, 261 Ala. 120, 123, 73 So.2d 239, 241 (1954) (quoting 2 Mechem on Agency 1447, § 1864).
Harper presented substantial evidence that Dr. Gremmel, in treating patients at Huntsville Hospital, was a servant of Huntsville Hospital. For example, the affiliation agreement vested in Huntsville Hospital "full authority for the care of all patients admitted" thereto, and it further provided that *348 "[p]hysicians and doctors of [the] Staff [should] at all times have primary responsibility and authority for the care and management of patients." (Emphasis added.) Because a jury question was presented on the issue of Dr. Gremmel's status at the time of the alleged malpractice, the summary judgment was improper.
The second reason for my disagreement with the trial court's application of the immunity defense to Dr. Gremmel as a matter of law is that, although there may be valid reasons for recognizing a qualified immunity defense, as we have done, for physicians practicing in state institutions, the application of that defense to treatment provided in private institutions creates inconsistent results. Under certain conditions, for example, a UAH physician practicing at Huntsville Hospital would be immune, while the physicians on staff at Huntsville Hospital, who are, pursuant to the affiliation agreement, primarily responsible for treatment, would not be immune. In other words, a UAH physician would be immune even while working under the direction of a Huntsville Hospital staff physician.
For these reasons, I respectfully disagree with the result in this case. A fortiori, I disagree with the majority's decision to affirm the summary judgment without a full analysis in a written opinion.